# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| VINCENT FREEMAN, II,<br><br>　　　Plaintiff<br><br>v.<br><br>ARMANDO LOZANO-CARRERA,<br>MILTON HSIEH,<br><br>　　　Defendants | Case No.: 3:18-cv-00192-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 45 |

　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

　　　Before the court is Defendants' Motion for Summary Judgment, arguing that Plaintiff failed to exhaust available administrative remedies. (ECF Nos. 45, 45-1 to 45-15.) Plaintiff, who is represented by counsel, filed a response. (ECF Nos. 46, 46-1.) Defendants filed a reply. (ECF No. 47.)

　　　After a thorough review, it is recommended that Defendants' motion be denied.

## I. BACKGROUND

　　　Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), though the events giving rise to this action occurred while he was in the custody of the Clark County Detention Center (CCDC) (a division of Las Vegas Metropolitan Police Department (LVMPD)), with respect to various criminal charges as a pretrial detainee. He has filed this action for excessive force under the Fourteenth Amendment against Armando Lozano-Carrera

and Milton Hsieh pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 14.) Plaintiff alleges that Defendants, without cause, attacked Plaintiff as he began to sit down in a courtroom holding cell.

Defendants move for summary judgment, arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

*& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172.

The exhaustion requirement also applies to pretrial detainees. *See Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).

**B. LVMPD/CCDC Grievance Process**

LVMPD Standard Operating Procedure (SOP) 14.00.00 governs inmate requests/grievances and complaints/grievances against staff. (ECF No. 45-14.) The SOP provides that informal resolution is encouraged, but "[i]f an inmate cannot obtain an informal solution and wishes to further address the request/grievance, the housing unit officer shall notify the floor sergeant" who will then attempt to informally resolve the request/grievance. (*Id*. at 2.) If an inmate cannot informally resolve the grievance, he "may wish to file a formal grievance for administrative remedy." (*Id*. at 3.)

SOP 14.00.00 then contains a list of items that are the "Officer's Responsibility," including providing the inmate with the inmate request/grievance form and accepting the completed form from the inmate. (*Id*.) "The Officer will assist the inmate and ensure that his/her request is turned in and routed properly." (*Id*.) The Officer will also "[r]oute the form through proper channels of command to the designated address if unable to resolve [the] request/grievance." (*Id*.)

"All complaints of excessive force … will be investigated/reviewed by the sergeant and responsible platoon lieutenant before the Inmate Request/Grievance Form is processed through the chain of command," referring to Section VI of the SOP. (*Id*.) Grievances "not resolved by the

officer or sergeant will be forwarded through the chain of command for resolution. The final step in resolution is the Deputy Chief, Detention Services Division (DSD)." (*Id*.)

Finally under the heading "Officer's Responsibility," it states that "[i]nmates may address grievances through the chain of command to get resolution of unresolved grievances. The inmate should provide documentation attached to the grievance showing he/she has attempted to resolve the grievance through the chain of command. *The officer will forward these grievances to the sergeant who will initial and forward through the chain of command until the grievance is resolved*." (*Id*. at 4, emphasis added.)

Next, SOP 14.00.00, discusses the role of the sergeant, and says that "[e]ach supervisor, or acting supervisor, will annotate every Inmate Request/Grievance Form to indicate that it was reviewed and an attempt was made at resolving the Request/Grievance. This will be done by writing, at the bottom of the form, their initials and P# (legibly) *before forwarding up the chain of command*." (*Id.,* emphasis added). A grievance concerning "use of force … or staff misconduct will be investigated by the supervisor *and answered or forwarded up the chain of command as determined by the supervisor*." (*Id*., emphasis added.)

SOP 14.00.00 contains a separate heading for inmate complaints/grievances against staff, which is Section VI that was previously referred to. (*Id*. at 6-7.) That section states that an officer who receives a complaint from an inmate of employee misconduct will be immediately forwarded it to the appropriate floor sergeant. (*Id*. at 6.) The floor sergeant will review and investigate and attempt to resolve the complaint. (*Id*. at 7.) If the complaint is resolved, the inmate request/grievance form will be completed and signed by the floor sergeant and distributed normally. (*Id*.) If the complaint is not resolved by the floor sergeant, "the grievance will be forwarded to the appropriate platoon lieutenant." (*Id*.) If the complaint includes an accusation of

violation of department policy, procedure, rule, regulation or local, state or federal law, the floor sergeant will document it and handle it in accordance with LVMPD Department Manual 5/101.26, "Maintenance of Values and Ethics." (*Id*.)

The complaint will then be reviewed by the appropriate platoon lieutenant who will attempt to resolve the complaint. (*Id*.) If resolved, the inmate request/grievance form will be completed and signed by the responsible platoon lieutenant and distributed normally. (*Id*.) If it is not resolved, or it is determined it is an allegation of violation of department policy, procedure, rule, regulation, state, local or federal law, the platoon lieutenant will complete a SOC, LVMPD Form 272, and handle in accordance with LVMPD Department Manual 5/101.26, "Maintenance of Values and Ethics." (*Id*.) The SOP goes on to indicate that after the platoon lieutenant, the bureau commander will review the complaint. Finally, under Section IV, the SOP provides that the investigation will be handled in accordance with LVMPD Department Manual 5/101.26, "Maintenance of Values and Ethics." (*Id*. at 8.)

SOP 14.00.00 also contains a section concerning Citizen Review Board complaint forms, and states that inmates requesting to make such a complaint will be provided the form; housing unit officers will assist the inmate with the form and it will be mailed to the Citizen Review Board. (*Id*. at 4-5.) According to its website, the LVMPD Citizen Review Board is an independent civilian oversight agency that reviews complaints of misconduct against LVMPD officers and reviews internal investigations by LVMPD. *See https://citizenreviewboard.com/,* last visited June 3, 2021.

Defendants also provide the declaration of LVMPD Sergeant Sheree Butler who states that inmates at CCDC with a complaint use the inmate grievance process. The first step is typically to speak with the inmate's housing unit officer, and if that does not provide a

satisfactory result, the inmate may file a formal grievance using an inmate request/grievance form (the forms were on paper at the time Plaintiff was at CCDC, but now are submitted electronically through a kiosk). Butler states that inmates may review the Inmate Handbook concerning the grievance process, which instructs inmates that they must address their grievances up the chain of command in the appeal procedure. She represents that the Inmate Handbook states that inmates must start with their unit housing officer, and if not satisfied, address each level of the chain of command, *i.e.*, officer, sergeant, lieutenant, captain and deputy chief. It further advises that appeal procedures are posted in each housing unit. Butler indicates that inmates have access to the Inmate Handbook. In addition, she states that it is common practice for corrections officers to inform inmates that if they are not satisfied with a response/decision they receive from an officer, they may appeal the decision up the chain of command. (Butler Decl., ECF No. 45-15.)

Butler also states that inmates may also make a complaint to the Citizen Review Board, but this is an advisory panel, and its decisions do not bind CCDC staff. Inmates need not complain to the CRB in the grievance appeal process. (*Id.*)

**C. Plaintiff's Grievance and CRB Complaint**

Plaintiff filed an inmate request/grievance on the issue of the use of force on August 5, 2016, addressed to the Field Services Lieutenant. Lieutenant Kathryn Bussell filled out the bottom portion of the grievance form on August 11, 2016, stating: "Issue has been resolved as follows: You and I discussed your grievance on 8-11-16. My office will be following up with the appropriate paperwork." (ECF No. 45-5 at 2.)

Plaintiff also filed a complaint about the incident with the Citizen Review Board on August 5, 2016. (ECF No. 45-6 at 3-4.) The Citizen Review Board screening panel dismissed the

complaint, agreeing with the investigation and conclusions reached of no violation, not sustained or unfounded. (*Id*. at 8.)

LVMPD Sergeant Steven Williams states in his declaration that he received Plaintiff's grievance on August 10, 2016, and began investigating by requesting video of the alleged incident and speaking with medical. He also instructed Lozano to complete a use of force report. He and Lieutenant Kathryn Bussell then reviewed the video and he reviewed the officers reports and concluded that Plaintiff's claims were false and the grievance was unfounded. According to Williams, "[t]he grievance and Use of Force investigation proceeded up LVMPD's chain of command, per policy." (ECF No. 45-9.)

In her declaration, Lieutenant Kathryn Bussell states that on August 11, 2016, a use of force investigation into Plaintiff's grievance was opened, and she reviewed the written reports, video and grievance, and spoke with Freeman and took pictures of his claimed injuries. She concluded that Plaintiff's complaints were unfounded and his grievance was contradicted by the evidence, and no policy violation occurred. (ECF No. 45-10.)

In his declaration, Plaintiff states that he does not recall being made aware of or being provided access to an Inmate Handbook for grievance appeal purposes, or being made aware of or having access to any rules for grievances appeals that Defendants claim were posted in the housing units. In addition, no officer ever told him he could appeal the decision on his grievance regarding officer misconduct. (Pl. Decl., ECF No. 46-1.)

Plaintiff also states that he was not made aware that he could seek monetary compensation for the violation of his rights through CCDC's grievance process. (*Id*.)

### D. Analysis

Insofar as Plaintiff argues that he did not have to continue the grievance process because he was seeking damages and the grievance process did not offer damages as a remedy, the Supreme Court has rejected this argument. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the inmate must exhaust administrative remedies irrespective of the forms of relief sought and offered through administrative avenues).

The question presented here is whether Plaintiff used all steps and followed all rules CCDC/LVMPD required to exhaust administrative remedies, or whether administrative remedies were otherwise unavailable to him.

It is clear that Plaintiff initiated a formal inmate grievance under SOP 14.00.00. The court's initial focus is on whether he was required to proceed all the way through the chain of command to complete the exhaustion process.

Under SOP 14.00.00, section II(B)(6), complaints of excessive force and staff misconduct, such as that alleged by Plaintiff, are investigated/reviewed by the sergeant and responsible platoon lieutenant before the inmate grievance form is processed through the chain of command (specifically referring to Section VI of this SOP). (ECF No. 45-14 at 3.) Section II(B)(7), which is the section discussing the *Officer's Responsibility* for formal inmate grievances, states that grievances not resolved by the officer or sergeant will be forwarded through the chain of command for resolution, with the final step being the Deputy Chief. (*Id*.) It then states again that inmates may address grievances through the chain of command to get resolution of *unresolved grievances*. (*Id*. at 4.) *The officer* is to forward these grievances to the "*sergeant who will forward through the chain of command* **until the grievance is resolved.**" (*Id*.)

SOP 14.00.00, Section VI(B)(1)(b), similarly provides that an inmate complaint/grievance against staff will be forwarded to the appropriate floor sergeant, who will review and attempt to resolve the complaint. (ECF No. 45-14 at 6.)

Williams was the sergeant and he received and investigated Plaintiff's grievance and determined the grievance was unfounded. According to Williams, "[t]he grievance and Use of Force investigation proceeded up LVMPD's chain of command, per policy." He does not state that Plaintiff requested that it proceed up the chain of command, but that it proceeded up the chain of command per policy. Moreover, Williams did not sign the grievance form indicating the grievance was resolved at that time per SOP 14.00.00, Section VI(B)(2)(a)(2).(ECF No. 45-14 at 7.) Instead, it was apparently forwarded to Lieutenant Bussell, consistent with SOP 14.00.00, Section VI(B)(2)(b). (*Id.*)

SOP 14.00.00, Section VI(B)(3)(a)(2), states that if the lieutenant resolves the complaint, the grievance form will be signed and distributed normally. (ECF No. 45-14 at 7.) Bussell filled in the grievance form indicating it had been "resolved" because the form states: "Issue has been resolved as follows: You and I discussed your grievance on 8-11-16. My office will be following up with the appropriate paperwork." (ECF No. 45-5 at 2.)

Again, SOP 14.00.00 says that the sergeant will forward the grievance through the chain of command **until it is resolved.** (ECF No. 45-14 at 4.) The grievance documentation reflects that the grievance was "resolved." Irrespective of whether it was Plaintiff's or a staff member's obligation to forward the grievance up the chain of command, that obligation ceased under the terms of SOP 14.00.00 when the grievance was deemed resolved by Lieutenant Bussell. Moreover, SOP 14.00.00 states in several places that it is the officer/sergeant who will forward the grievances through the chain of command. (ECF No. 45-14 at 3, SOP 14.00.00, Section

II(B)(6) (it is the Officer's Responsibility to "[r]oute the form through proper channels of command to the designated address if housing unit officer is unable to resolve request/grievance); Section II(B)(7) (under "Officer Responsibility," "Grievances that are not resolved by the officer or sergeant will be forwarded through the chain of command for resolution."); Section II(B)(8) ("The officer will forward these grievances to the sergeant who will initial and forward through the chain of command until the grievance is resolved."); Section II(C)(1) (supervisor will annotate form "before forwarding up the chain of command."); Section II(C)(2) (grievance concerning use of force or staff misconduct "will be investigated by the supervisor and answered or forwarded up the chain of command as determined by the supervisor."); Section VI(B)(2)(b) (if not resolved by floor sergeant, complaint will be forwarded to the appropriate platoon lieutenant). Therefore, it appears that Plaintiff exhausted his administrative remedies insofar as SOP 14.00.00 is concerned.

Next, Defendants present evidence that there is an Inmate Handbook that says that an inmate must proceed all the way through the chain of command to exhaust administrative remedies. Defendants do not actually produce a copy of that handbook (or the relevant portions of the handbook), but rely on a representation from Butler that the handbook instructs inmates as such. (Butler Decl., ECF No. 45-15 at 3 ¶ 9.)

Plaintiff, however, states that he does not recall being made aware of or being provided access to an Inmate Handbook for grievance appeal purposes. (Pl. Decl., ECF No. 46-1 at 2 ¶ 3.)

Butler states generally that inmates have access to the handbook, but does not provide any evidence specifying *how* inmates have access to the handbook, or any evidence that *Plaintiff* in fact had access to the handbook or was made aware it contained rules regarding the inmate

grievance process (*i.e.,* that it was given to him on intake, that it was discussed in an orientation, or that he was otherwise advised he could request to see the handbook).

Butler also represents that the handbook informs inmates that the appeal procedures are posted in each housing unit (Butler Decl., ECF No. 45-15 at 3 ¶ 9(a)), but Plaintiff states that he does not recall observing, being made aware of, or having access to any rules for grievance appeals Defendants claim were posted in the housing units. (Pl. Decl., ECF No. 46-1 at 2 ¶ 4.) In their reply, Defendants provide no evidence that these rules were actually posted in Plaintiff's housing unit in a place where Plaintiff would easily have had access to the rules.

Butler also states that it is common practice for corrections officers to inform inmates that if they are not satisfied with the response/decision they receive, they may appeal that decision up the chain of command. (Butler Decl., ECF No. 45-15 at 3 ¶ 11.) Plaintiff states in his own declaration, however, that no officer ever informed him he could appeal the decision on his grievance regarding officer misconduct. (Pl. Decl., ECF No. 46-1 at 2 ¶ 5.) Defendants provide no evidence that any officer in fact told Plaintiff he could/should appeal his grievance further.

In sum, the evidence reflects that Plaintiff complied with the requirements to exhaust administrative remedies that were made available to him, *i.e.*, those outlined in SOP 14.00.00. Plaintiff was not required to exhaust unavailable administrative remedies. *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). Available means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *Id*. (citation and quotation marks omitted). The Supreme Court indicated that relevant questions in determining availability of administrative remedies include whether the procedures were knowable by an ordinary prisoner, or "was the system so confusing that no such inmate could make use of it." *Id*.

Plaintiff states he does not recall being notified of the Inmate Handbook. SOP 14.00.00 makes no mention of the Inmate Handbook, and the grievance itself does not advise Plaintiff he had to take any further steps to exhaust administrative remedies. While Butler represents that inmates have access to the handbook and the rules were posted in the units, Plaintiff refutes these contentions, and the defense provides no specific factual details for the court to conclude that Plaintiff did have access to the handbook containing these additional exhaustion requirements. On this record, the court cannot conclude that these additional administrative remedies were available to Plaintiff. *See Albino v. Baca*, 747 F.3d 1162, 1175-76 (9th Cir. 2014) (defendants failed to carry burden of proving affirmative defense of exhaustion that there was an available remedy that the inmate failed to exhaust where there was no specific evidence the inmates were given access or even knew about the manual discussing the grievance procedure or that inmates otherwise knew about the complaint process, and inmate stated in his declaration he was not given an orientation, had not seen and was not told about the manual or complaint forms).

For these reasons, Defendants' motion for summary judgment based on the argument that Plaintiff failed to exhaust administrative remedies should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Defendants' motion for summary judgment (ECF No. 45-15).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 3, 2021

_____
William G. Cobb
United States Magistrate Judge